**FILED - GR**

April 3, 2008 9:09 AM

RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _RMW_____ /_____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

CELEBRATION COMMUNITY CHURCH, a
not for profit ecclesiastical corporation,

Plaintiff,

v.

Hon.
Case No.

**1:08-cv-314**

**Janet T. Neff**
**U.S. District Judge**

CITY OF MUSKEGON, MICHIGAN, a
municipal corporation, and the CITY OF
MUSKEGON PLANNING COMMISSION, a
Michigan municipal body,

Defendants.

**TOMKIW DALTON, plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiff
321 Williams Street
Royal Oak, MI 48067
(248) 591-7000
(248) 591-7790 (Fax)
ddalton@tomkiwdalton.com

## BRIEF IN SUPPORT OF PLAINTIFF'S
## *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER,
## OR IN THE ALTERNATIVE, SHOW CAUSE ORDER ·
## AND REQUEST FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..............................................................................................iii

CONTROLLING AUTHORITY........................................................................................1

CONCISE STATEMENT OF THE ISSUE PRESENTED .............................................1

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS ................................................................................................2

    A.    The Church..............................................................................................................2

    B.    The City's Denial of Celebration Community Church's Application for a Special
           Land Use Permit .....................................................................................................4

    C.    The Zoning Ordinance.............................................................................................6

    D.    The City's Discriminatory and Unequal Treatment of Religious Assemblies ........6

LEGAL ARGUMENT........................................................................................................8

    A.    Standard of Review..................................................................................................8

    B.    Celebration Community Church is Entitled to Immediate Injunctive Relieve
           Enjoining Enforcement of the Applicable Provisions of the Zoning Ordinance.....9

           1.   Celebration Community Church Has a Strong Likelihood of Success on
                 the Merits of its Challenge to the Zoning Ordinance....................................9

               a.   Michigan's liquor law cannot be used to justify the City's unequal
                   treatment .............................................................................................15

               b.   Loss of property tax revenue and alleged disharmony with surrounding
                   area can not justify the City's unequal treatment.................................16

           2.   Celebration Community Church has no Adequate Remedy at Law and will
                 Suffer Irreparable Harm if Injunctive Relief is Not Granted.....................19

           3.   Greater Harm will Result to the Church than to Defendants......................20

           4.   The Issuance of a TRO, or alternatively a Preliminary Injunction, will
                 Benefit the Public Interest..........................................................................21

CONCLUSION.................................................................................................................22

## INDEX OF AUTHORITIES

**Cases**

*Anshe Chesed Congregation* v. *Bruggemeier*, 115 N.E.2d 65, 69 (Ohio App. 1953)................. 16

*Association of Community Organizations for Reform Now* v. *City of Dearborn*, 696 F. Supp.
268, 271 (E.D. Mich. 1988)................................................................................................... 20

*Church of Jesus Christ of Latter-Day Saints* v. *Jefferson County*, 741 F. Supp. 1522, 1526 n.7
(N.D. Ala. 1990) .................................................................................................................... 16

*Church of the Lukumi Babalu Aye* v. *City of Hialeah*, 508 U.S. 520, 536 (1993)....................... 14

*City of Chicago Heights* v. *Living Word Outreach Full Gospel Church and Ministries, Inc.,* 749
N.E.2d 916, 929 (Ill. 2001) (citing 3 K. Young, Anderson's American Law of Zoning § 21.13,
at 743 (4th ed. 1996))................................................................................................................... 19

*Cottonwood Christian Center* v. *Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 (C.D.
Cal. 2002.)................................................................................................................ 17, 20, 22

*Digrugilliers* v. *Consolidated City of Indianapolis*, 506 F.3d 612 (7th Cir. 2007) .............. passim

*Diocese of Rochester* v. *Planning Bd.*, 136 N.E.2d 827, 836 (N.Y. 1956)................................... 16

*Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) (citing *New York Times Co.* v. *United States*, 403 U.S.
713 (1971)).............................................................................................................................. 19

*Elsinore Christian Center* v. *City of Lake Elsinore,* 291 F. Supp. 2d 1083 (C.D. Cal. 2003) rev'd
on other grounds 197 Fed. Appx. 718 (9th Cir. 2006) (holding RLUIPA constitutional)........ 16

*Englewood* v. *Apostolic Christian Church*, 362 P.2d 172, 177 (Colo. 1961) (McWilliams, J.,
concurring).............................................................................................................................. 16

*Greentree at Murray Hill Condo.* v. *Good Shepherd Episcopal Church*, 550 N.Y.S.2d 981, 989
(N.Y. Sup. Ct. 1989) .............................................................................................................. 16

*Jacobi* v. *Zoning Bd. of Adjustment*, 196 A.2d 742, 745 (Pa. 1964) ........................................... 16

*Konikov* v. *Orange County*, 410 F.3d 1317, 1324 (11th Cir. 2005) ............................................ 13

*Larson* v. *Valente,* 456 U.S. 228 (1982);.42 U.S.C. § 2000cc(b)(2) ........................................... 14

*Leary* v. *Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).................................................................. 8

*Love Church* v. *City of Evanston*, 671 F. Supp. 515, 519 (N.D. Ill. 1987), *vacated based on
standing*, 896 F.2d 1082 (7th Cir. 1990)................................................................................. 14

*Martin-Marietta Corp.* v. *Bendix Corp.,* 690 F.2d 558, 568 (6th Cir. 1982) ............................... 22

*Midrash Sephardi, Inc.* v. *Town of Surfside*, 366 F.3d 1214, 1229-1235 (11th Cir. 2004).... 10, 11

*Miller* v. *Blackwell*, 388 F.3d 546 (6th Cir. 2004).................................................................... 9, 20

*Newsom* v. *Norris,* 888 F.2d 371, 378 (6th Cir. 1989) ................................................................ 19

*North Const. Co.* v. *Mayo*, 432 F. Supp. 725 (D.C. Mich. 1975) (Miles, J.).................................. 8

*Sts. Constantine and Helen Greek Orthodox Church* v. *City of New Berlin*, 396 F.3d 895, 900
(7th Cir. 2005) (citations omitted) .................................................................................... 14, 19

*United Food & Commercial Workers Union, Local 1099* v. *Southwest Ohio Reg'l Transit Auth.,*
163 F.3d 341, 347 (6th Cir. 1998) (citation omitted)................................................................. 9

*Vietnamese Buddhism Study Temple in America* v. *City of Garden Grove*, 460 F. Supp. 2d 1165,
1174-75 (S.D. Cal. 2006)................................................................................. 16, 17, 20, 21

*Vision Church* v. *Village of Long Grove*, 468 F.3d 975, 1003 (7th Cir. 2006) ............................ 10

*Western Presbyterian Church* v. *Board of Zoning Adjustment of the District of Columbia*, 849
F.Supp. 77 (D.D.C. 1994)....................................................................................................... 11

**Statutes**

291 F. Supp. 2d at 1093 (citing Report of the House Committee on the Judiciary (House Rep. 106-219) (July 1, 1999), at text accompanying n. 79 (cited in Hatch-Kennedy Statement, 146 Cong. Rec. S. 7774, at *7775)) ......................................................................................... 20, 21
MCL 436.1503 ....................................................................................................................... 8, 18
Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ........................ passim

**Other Authorities**

146 Cong. Rec. S7774-01, *S7776 ............................................................................................... 17
146 Cong. Rec. S7774-75 (2000) ............................................................................................... 14

## CONTROLLING AUTHORITY

Celebration Community Church relies upon the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, and *Digrugilliers* v. *Consolidated City of Indianapolis,* 506 F.3d 612 (7th Cir. 2007) (holding the equal-terms section of RLUIPA is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses).

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Should this Honorable Court grant Plaintiff a temporary restraining order or, in the alternative, a preliminary injunction in order to prevent Defendants from violating Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, and the First and Fourteenth Amendments of the Constitution when the City of Muskegon's Zoning Ordinance, on its face and as applied to Plaintiff, discriminates against religious uses and imposes a substantial burden on Plaintiff's religious exercise?[1]

*Plaintiff Celebration Community Church answer: Yes*

## INTRODUCTION

Plaintiff, Celebration Community Church is a Christian Church that purchased a building, originally used as an automobile dealership, in 2007. The property, located in the City of Muskegon, Michigan is zoned B-4, which only permits a church use through a special approval land use permit. The City planning staff recommended the approval of the proposed use as it met all of the requirements of the City Zoning Ordinance. In December 2007, the City Planning Commission denied the special land use permit, citing loss of property tax revenue and an

---

[1]     Although the Church's complaint raises several counts, the Church's motion for a temporary restraining order or preliminary injunction focuses on RLUIPA's equal terms and nondiscrimination provisions. 42 U.S.C. 2000cc(b)(1) and (b)(2).

adverse impact on any bar located within 500 feet of Celebration Community Church. The decision was affirmed by the Planning Commission the following month.

Celebration Community Church initiated this matter today by filing a Complaint challenging the constitutionality of portions of the City of Muskegon Zoning Ordinance. Celebration Community Church alleges that the Zoning Ordinance- both on its face and as applied to it- violates the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Michigan Constitution.    In particular, Celebration Community Church contends that the Code's discriminatory treatment of religious uses violates its constitutional rights to the free exercise of religion, freedom of speech, association and assembly, and equal protection of the laws.  As a result of the unconstitutional provisions in Defendants' Zoning Ordinance and the unconstitutional actions of Defendants, Celebration Community Church is suffering and will continue to suffer irreparable harm unless Defendants are immediately enjoined from enforcing its discriminatory Zoning Ordinance against Celebration Community Church.

## STATEMENT OF FACTS

### A.     *The Church*

Celebration Community Church is a congregation of Christians that is part of the Christian Reformed Church of North America which appeals exclusively to the scriptures of the Holy Bible for its authority and means of governance.  It is a religious body formed for the promotion of the message of the Christian gospel, instruction and righteous conduct, fellowship of its members and outreach.   Celebration Community Church sincerely believes that the foregoing ministries are duties owed to God by Christians and by Celebration Community Church corporately.

2

In accordance with its beliefs, Celebration Community Church regularly assembles on Sunday mornings and Wednesday evenings to worship publicly Almighty God. Celebration Community Church conducts religious services and activities in pursuit of its mission and responsibilities as a church. 80 to 100 persons regularly attend Celebration Community Church's Sunday morning worship services.

Since 2005, Celebration Community Church has assembled for these worship and other religious activities at Western Michigan Christian High School in the City of Norton Shores, Michigan. Celebration Community Church leases the property on a month-to-month basis, with access strictly limited to Sunday mornings for worship. However, the High School will begin major renovations and add a new gym in April 2008 which will severely impact Celebration Community Church's religious exercise. (**Exhibit 1,** *DeBoer affidavit* ¶4). Additionally, the High School is free to end Celebration Community Church's rental arrangement at any time with 30 days notice. (*Id.* ¶10) For these reasons, Celebration Community Church found itself in great need of a property of its own so on or about December 28, 2007, Celebration Community Church purchased property located at 1260 West Sherman, Muskegon, Michigan 49444 (the "Property").

Celebration Community Church seeks to occupy and use the Property for the primary purpose of religious exercise: to gather corporately for the public worship of God, to publicly preach doctrines of the Christian faith, to formally instruct persons in the Holy Bible, to provide for fellowship gatherings, to reach out to the community through various ministries and to provide other religious activities and ministries. (*Id.* ¶ 6).

3

**B.**    *The City's Denial of Celebration Community Church's Application for a Special Land Use Permit*

On November 20, 2007 Celebration Community Church, through Michael Houskamp, the agent/realtor for Celebration Community Church, applied to the City of Muskegon for a special land use permit seeking permission from the City to use the Property as a house of worship. The City of Muskegon Planning Department offered a recommendation of approval of the use of the property as a church as all of the conditions required for approval of a church in a B-4 zone are met by the property. (*A copy of the City of Muskegon Planning Department's recommendation is attached as **Exhibit 2**.*)

Nonetheless, on December 13, 2007 the City Planning Commission voted to deny the application for the reason that the Property is located within 500 feet of an existing bar, and Celebration Community Church use would have a negative impact on the bar. The Commission further justified its denial on the fact that the property would become exempt from property taxes if it were owned and operated by a church. Its final reason for denying the permit was that a church would supposedly not fit the surrounding area. (*A true copy of the minutes is attached as Exhibit 3.*).

After the permit denial, Celebration Community Church contacted Rick Perkins, the Director of the Enforcement Division of the Michigan Liquor Control Commission for the State of Michigan and received an email response. (***Exhibit 4***). Celebration Community Church provided the email to the planning commission for its review before its next meeting. Mr. Perkins noted that under Michigan law and the rules of the Michigan Liquor Control Commission, Celebration Community Church would not have any impact on the current liquor license held by a neighboring bar located within 500 feet. Further, the neighboring bar would be

4

able to transfer its liquor license to a new operator in the same location without any ramifications due to Celebration Community Church opening within 500 feet of the bar.

Mr. Perkins also confirmed that Celebration Community Church would not have any impact on the bar's ability to reconstruct and operate if the bar were to burn down or needed to be refigured or constructed. Likewise, Celebration Community Church would have no impact on the bar's ability to expand its business by adding space to its existing licensed premises. Finally, the bar receives a preference from the Michigan Liquor Control Commission since it was there before Celebration Community Church because it was already licensed at this location. And, MCL 436.1503, the statute that provides for the 500 foot distance from a church or school, is limited to a "new application" or a "transferred location" evidencing which protects existing license holders. Accordingly, there was no reason under Michigan law, as set forth in MCL 436.1503, as applied by the Michigan Liquor Control Commission, to suggest that the approval of Celebration Community Church at its new facility would have any impact on the adjacent bars. (*See, Exhibit 5, Perkins Affidavit*.)

The City of Muskegon also contacted the State of Michigan Liquor Control department and was told the same information. (*See Exhibit 6, Muskegon Planning Department email)*

On January 22, 2008, Celebration Community Church appeared before the Planning Commission a second time on a request for reconsideration. The Planning Commission again denied the special land use permit. (*A true copy of the City's January 22, 2008 minutes is attached as Exhibit 7*) Celebration Community Church desires to occupy and use the Property as a church, and to do so immediately.

5

C.     *The Zoning Ordinance*

Thereafter, Celebration Community Church contacted the Director of the Enforcement Division of the Michigan Liquor Control Commission for the State of Michigan.  The City regulates the use of land in its geographical jurisdiction pursuant to the City of Muskegon's Zoning Ordinance (referred to herein as the "Zoning Ordinance" or "Ordinance").  The City does not permit churches as of right in any of its zoning districts.  Instead, for a church to locate in the City, it must obtain special dispensation from the City. (*A copy section B-4, of the Zoning Ordinance, "General Business," is attached as* **Exhibit 8**. *A copy section B-2 of the Zoning Ordinance, "Convenience and Comparison Business," is attached as* **Exhibit 9**).

For a church to locate in a B-4 zone, in which the Property at issue is located, it must obtain a special land use permit from the City. (***Exhibit 8**, Section 1301, ¶ 7, p. 4) The purely discretionary standards governing the issuance of a special land use permit are found in Section 2332 of the Zoning Ordinance. (*A copy section 2332; Special Land Uses and Planned Unit Developments" is attached as* **Exhibit 10**).

D.     *The City's Discriminatory and Unequal Treatment of Religious Assemblies*

Although the City does not permit churches as of right in any of its zoning districts, it allows other non-religious assembly uses as of right.  For example, in the B-2 district, private clubs, lodge halls, social and similar organizations, including assembly or rental halls are permitted, while churches require a Special Approval Land Use Permit. (***Exhibit 9**, compare Section 1100, section 8 with Section 1101, section 4.)*

In the B-4 business district where Celebration Community Church's property is located and where it desires to assemble for worship and other religious activities, the City grants, as of right, permission to numerous assembly land uses but not churches.  These permitted uses

6

include: theaters, motels and hotels, business schools or private schools operated for profit (including music and voice schools), amusement, entertainment and recreational uses including bowling alleys and skating rinks, restaurants and cocktail lounges, funeral homes and "uses similar to the above Principal Uses." (*Exhibit 8, compare Section 1300 ¶¶ 4, 8, 10, 12, 13, 16, 18, and 19 with Section 1301 ¶ 7*). The City also allows all of the Principal Uses permitted in B-2 Districts, such as "private clubs, lodge halls, social, and similar organizations, including assembly or rental halls" and "similar" uses, to locate in B-4 Districts, but does not permit churches as of right. (*Exhibit 9 Section 1100 ¶ 8,incorporated by reference by Section 1300 ¶ 17, but compare Section 1301 ¶ 6*).

The Zoning Ordinance allows one particular type of religious assemblies as of right in B-4 Districts—Funeral Homes—but does not allow churches as of right. (*Exhibit 8 Section 1300 ¶ 4*).

On March 9, 2008, Mr. Steven T. Wisneski, the City Commissioner for Muskegon's Fourth Ward (where the property sits), has publicly accused Celebration Community Church of "want[ing] to cause harm," "harassing the city in a letter to the editor," reducing the "tax rolls," "forc[ing]" liquor license restrictions on "good taxpaying residents," and of being a poor citizen and neighbor by its allegedly inconsiderate plans for public worship on its property. (Attached as *Exhibit 11* is a true copy of Mr. Wisneski's Letter to the Editor which appeared in the Muskegon Chronicle on 3/9/08).

On March 26, 2008, Ms. Lonna Anguilm, the Muskegon Zoning Administrator, wrote to Celebration Community Church saying that some neighbors "raised questions" regarding the use going on inside the Property. (*See Exhibit 12, 3/26/08 Letter from Zoning Administration to Celebration Community Church*). The Zoning Administrator then stated that "offices [sic] uses

7

**only** would be allowed" on the Property as opposed to "church services or other activities." *Id.* (emphasis in original). She then warned that "many neighborhood residents and business owners are watching the property with interest, and you can be sure that I will be contacted if any other activities are taking place on the property. I will then be compelled to enforce the zoning ordinance and require any such uses to cease immediately." *Id.*

The City knowingly, willfully, and maliciously discriminated against Celebration Community Church in denying Celebration Community Church a permit to use their Property as a house of worship and in preventing *any* religious exercise on the Property, or alternatively, the City acted in reckless disregard of Celebration Community Church's rights.

Celebration Community Church now seeks a temporary restraining order, or alternatively a preliminary injunction, enjoining the Defendants from precluding its use of the property for religious activities and services and precluding further discriminatory application and enforcement of Muskegon's zoning laws against Celebration Community Church by Defendants.

## LEGAL ARGUMENT

### A. Standard of Review

The grant of a temporary restraining order or preliminary injunction rests in the Court's sound judicial discretion. When determining whether to issue such relief, a district court must consider four factors: (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a temporary restraining order or preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the TRO or preliminary injunction. *North Const. Co.* v. *Mayo*, 432 F. Supp. 725 (D.C. Mich. 1975) (Miles, J.); *Leary* v. *Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Miller* v. *Blackwell*, 388 F.3d 546 (6th Cir.

8

2004).. The Court's determination as to the requested injunctive relief is reached by balancing these factors against each other. *United Food & Commercial Workers Union, Local 1099* v. *Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998) (citation omitted).

> **B.     Celebration Community Church is Entitled to Immediate Injunctive Relief Enjoining Enforcement of the Applicable Provisions of the Zoning Ordinance**

Celebration Community Church's use of its Property for religious assembly is protected under RLUIPA, and may not be subjected to discriminatory treatment by the City. As elaborated below, each of the elements necessary for this Honorable Court to issue a preliminary injunction is satisfied in this instance.

> *1.     Celebration Community Church Has a Strong Likelihood of Success on the Merits of its Challenge to the Zoning Ordinance.*

The Zoning Ordinance's facial discrimination against religious uses in general and its as-applied discrimination against Celebration Church in particular unquestionably violate the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The Church's strong likelihood of prevailing on the merits in this action is based on two main reasons. First, the Zoning Ordinance, on its face and as applied by the City, violates the equal terms provision of RLUIPA because it treats religious uses on less than equal terms with nonreligious uses, 42 U.S.C. § 2000cc(b)(1). Second, the Zoning Ordinance, on its face and as applied by the City, violates RLUIPA's nondiscrimination provision because it discriminates by religion by privileging one type of religious assembly (funerals) over the Church's religious assembly. 42 U.S.C. § 2000cc(b)(2).

This is a case where non-religious assemblies need not apply for a special land use permit, but religious assemblies must. And here the Church applied and was denied just such a permit precisely because its assembly use was religious. Since Muskegon's Zoning Ordinance

permits assembly uses as of right in B-4 zones such as "private clubs, lodge halls, social and similar organizations, including assembly or rental halls," and others that are comparable to in impact to houses of worship, but not the latter, it violates RLUIPA Section 2(b)(1). RLUIPA's equal terms provision, 42 U.S.C. 2000cc(b)(1), provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." Celebration wishes to locate in a commercial district and simply be treated the same as secular assemblies. The Seventh and Eleventh Circuits have stated that when analyzing an equal terms claim under Section 2(b)(1), the appropriate inquiry is "whether the land use regulation treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *See Digrugilliers* v. *Consolidated City of Indianapolis,* 506 F.3d 612, 615 (7th Cir. 2007); *Vision Church* v. *Village of Long Grove*, 468 F.3d 975, 1003 (7th Cir. 2006); *Midrash Sephardi, Inc.* v. *Town of Surfside*, 366 F.3d 1214, 1229-1235 (11th Cir. 2004) The Sixth Circuit and Western District of Michigan have yet to define the appropriate inquiry.

RLUIPA's sponsors were concerned with the specific problem of municipalities making determinations that churches are better suited for particular zones and less well suited for others, which can vary widely according to the perceptions of local officials. The Senate sponsors' joint statement notes that "[c]hurches have been excluded from residential zones because they generate too much traffic, and from commercial zones because they don't generate enough traffic." Joint Statement of Senator Hatch and Senator Kennedy on the Religious Land Use and Institutionalized Persons Act of 2000, 146 Cong. Rec. S7774-75 (2000). As a result, houses of worship have been denied the ability to locate where comparable secular assemblies are permitted: "Zoning codes frequently exclude churches in places where they permit theaters,

10

meeting halls, and other places where large groups of people assemble for secular purposes * * * Churches have been denied the right to meet in rented storefronts, in abandoned schools, in converted funeral homes, theaters, and skating rinks — in all sorts of buildings that were permitted when they generated traffic for secular purposes." *Id.*

The only distinction between religious uses, which are restricted, and other similar uses, which are permitted as of right in Muskegon's Ordinance, is the *religious* nature of the use. *See also Western Presbyterian Church* v. *Board of Zoning Adjustment of the District of Columbia,* 849 F.Supp. 77 (D.D.C. 1994) (Granting preliminary injunction against the requirement of a special permit process for church soup kitchens while allowing commercial restaurants as of right).

Muskegon's Ordinance is substantially similar to the Surfside Zoning Ordinance ("SZO") that the Eleventh Circuit found violated the equal terms provision of RLUIPA. *Midrash Sephardi, Inc.* v. *Town of Surfside,* 366 F.3d 1214, 1235 (11th Cir. 2004). Churches and synagogues were permitted to operate in Surfside only by way of a conditional use permit, and only in a residential district. *Id.* at 1219. Midrash Sephardi, an Orthodox Jewish synagogue, sought to operate a worship facility in Surfside's business district. *Id.* at 1220. Among the uses permitted by the SZO in the business district were private clubs and lodge halls. *Id.* Churches and synagogues were entirely prohibited from the business district. *Id.* The Eleventh Circuit found that the differential treatment between religious assemblies and private clubs and lodges resulted in a facial violation of RLUIPA. *Id.* at 1231. The Court subjected the SZO to strict scrutiny, and found "no evidence that private clubs and lodges actually contribute to the business district in a way appreciably different than religious institutions." *Id.* at 1234 (emphasis in original). The Court found that the treatment of synagogues as categorically different than

11

secular assemblies "indicates that [the zoning ordinance] pursues Surfside's interests only against conduct motivated by religious belief." *Id.* at 1235. The zoning ordinance thus failed to survive strict scrutiny, and was struck down. *Id.*

Another strikingly similar situation occurred recently in a Seventh Circuit case arising out of Indianapolis, where the Baptist Church of the West Side leased property to use for its worship services. *Digrugilliers* v. *Consolidated City of Indianapolis,* 506 F.3d 612, 614 (7th Cir. 2007). Like the Church in this case, the Baptist Church of the West Side used their property for worship services and also for classes for Bible instruction, fellowship gatherings, administrative functions, and various ministries of the outreach to the community. Between 30 and 50 persons attend the Sunday morning worship services. The property that the church leased is zoned C-1, which is designated for "office-buffer commercial use." Permitted uses in the C-1 zone included "auditoriums, assembly halls, community centers, certain health services, membership organizations or clubs, mortuaries, any type of office use, radio and television studios, museums, and certain types of specialized schools." The city created a specific use category for "religious use." "Religious use" is a permitted use in all "dwelling districts" if the user obtains a Special Exception. *Id.* at 614-15.

Almost a year after the church moved in, the city notified the church that it was violating the zoning code by "conducting an activity not permitted in a C-1 district," and informed the Church that if it wished to continue to operate on the property, it would have to apply for a use variance or face a lawsuit; fines of up to $2,500 for each "violation"; and court costs. Conversely, the city did not require nonreligious groups to obtain special permission to use leased buildings for operationally similar purposes. *Id.* at 614. The church declined to apply for a variance because of the cost and burden. Pastor Digrugilliers brought suit in federal district

court on behalf of himself and the church, and requested a preliminary injunction in order to use its rented building while its lawsuit against the city moved forward in court. *Id.*

The district court denied the Church's preliminary injunction. The Seventh Circuit reversed, holding that the City's ordinance violated the equal terms provision of RLUIPA because it treats Churches worse than comparable nonreligious uses permitted in the C-1 zoning district.

Just like in this case, the defendant city justified its actions by seeking to prevent the loss of liquor licenses for neighboring properties, but the Seventh Circuit found this argument meritless because a law designed to *protect* churches cannot be employed as the means to *discriminate against* churches. *Id.* at 615-17.

Thus, case law shows that the City of Muskegon, by its Ordinance and by its stated reasons for denying Celebration Church's use, has unambiguously treated religious uses on a less than equal basis with nonreligious uses. *Konikov* v. *Orange County*, 410 F.3d 1317, 1324 (11th Cir. 2005) (discussing elements of as-applied challenges under RLUIPA's equal terms provisions). The Church has an interest in property in a B-4 district, and the Ordinance allows as permitted uses in these districts: theaters, motels and hotels, business schools or private schools operated for profit, amusement, entertainment and recreational uses including bowling alleys and skating rinks, restaurants and cocktail lounges, as well as all of the principal permitted uses as allowed in B-2 Districts, which includes "private clubs and lodge halls," but does not permit churches as of right. (***Exhibit 8**, compare Section 1300 ¶¶ 4, 8, 10, 12, 13, 16, 18, and 19 with Section 1301 ¶ 7 and Exhibit 9 Section 1100 ¶ 8)* These myriad uses are "nonreligious assemblies and institutions," within the meaning of RLUIPA. *See* 146 Cong. Rec. S7774-01, *S7776. Moreover, the fact that Celebration Church meets all of the B-4 special land use

13

requirements, but the City denied the permit due to the Church's potential impact on neighboring

bars and property tax revenue, is further evidence that the City is excluding the Church from the

area solely because of the ***religious character*** of the use.

Finally, The Zoning Ordinance, on its face and as applied, discriminates by religion by

privileging one type of religious assembly—funerals—above the Church's religious assembly.

See **Exhibit 8**, Section 1300 ¶ 4.[2]  RLUIPA protects against

> the vulnerability of religious institutions-especially those that are not affiliated
> with the mainstream Protestant sects or the Roman Catholic Church-to subtle
> forms of discrimination when, as in the case of the grant or denial of zoning
> variances, a state delegates essentially standardless discretion to nonprofessionals
> operating without procedural safeguards. . . . [If] the denial of a zoning variance,
> imposes a substantial burden on religious exercise . . . and the decision maker
> cannot justify it, the inference arises that hostility to religion, or more likely to a
> particular sect, influenced the decision.

*Sts. Constantine and Helen Greek Orthodox Church* v. *City of New Berlin*, 396 F.3d 895, 900

(7th Cir. 2005) (citations omitted).  The City's discrimination is not subtle.  Funeral homes by

their very nature regularly host and conduct religious assemblies on their properties, *i.e.* funerals.

It is discriminatory for the City to allow regular religious assemblies of only this one type as the

City is privileging one form of liturgical or religious expression over all others, including the

Church's.  This it cannot do without running afoul of the First Amendment and RLUIPA's

nondiscrimination provisions.  *Church of the Lukumi Babalu Aye* v. *City of Hialeah*, 508 U.S.

520, 536  (1993) (Striking down city ordinances that banned Santeria animal sacrifices but

allowed Kosher slaughter of animals); *Larson* v. *Valente,* 456 U.S. 228 (1982);.42 U.S.C. §

2000cc(b)(2)

_____

[2] See *Love Church* v. *City of Evanston*, 671 F. Supp. 515, 519 (N.D. Ill. 1987) ("While traffic
concerns are legitimate, we could hardly call them compelling. In any event, Evanston does not
indicate how a church poses a greater traffic problem than, say, a funeral parlor."), *vacated based
on standing*, 896 F.2d 1082 (7th Cir. 1990)

### a. Michigan's liquor law cannot be used to justify the City's unequal treatment.

Any argument the City may make that the Church's use of the property is meaningfully different from the other permitted uses based on MCL 436.1503, the statute that provides for the 500 foot distance from a church or school, is unpersuasive. Under this statute, the actual use of Celebration Church here is not meaningfully different from the permitted as-of-right non-religious assemblies stated in Muskegon's Zoning Ordinance for two reasons. First, Rick Perkins, the Director of the Enforcement Division of the Michigan Liquor Control Commission for the State of Michigan concluded that under the law and the rules of the Michigan Liquor Control Commission, the Church would NOT have any impact on the current liquor license held by a neighboring bar located within 500 feet. (*Exhibit 5*) Accordingly, there was no reason under Michigan law, as set forth in MCL 436.1503, and as applied by the Michigan Liquor Control Commission, to suggest that the approval of Celebration Church at its new facility would have any impact on the adjacent bars and therefore cannot justify the City's denial. (*Id.*)

Second, even assuming that this statute comes into play, it cannot be used by the City to discriminate against the Church. Any harm to businesses wishing to sell alcohol does not arise from any activity of the Church that could differentiate it from a secular assembly; rather, it arises from Michigan's decision to *protect* churches as a category from the harm arising from premises selling alcohol locating near them. As the Seventh Circuit concluded in *Digrugilliers,* the government cannot, by granting Churches special privileges (the right of the Church to be free from alcohol in its vicinity), "furnish the premise for excluding churches from otherwise suitable districts." 506 F.3d at 616. In this case, Celebration Church is totally suitable for the B-4 district; the City has admitted, on the record, that the Church has otherwise met all requirements necessary for a SLUP. Michigan's law protecting churches "cannot be a defense to

a zoning exclusion challenged under the equal-terms provision of the Religious Land Use and Institutionalized Persons Act." *Id.* at 617. Therefore, by the government converting a shield into a sword, it is treating the Church on less than equal terms as non-religious assemblies.

### b. Loss of property tax revenue and alleged disharmony with surrounding area can not justify the City's unequal treatment.

In another attempt to use the Church's statutory protections as a weapon against it, the City cited the Church's tax-exempt status as a method of placing it on less than equal terms with nonreligious assemblies. The City's claimed interest in preserving property values cannot be used to justify a complete exclusion of a religious institution from the City's jurisdiction. *Vietnamese Buddhism Study Temple in America* v. *City of Garden Grove*, 460 F. Supp. 1165, 1174-75 (S.D. Cal. 2006).[3] This same issue was discussed in *Elsinore Christian Center* v. *City of Lake Elsinore*, 291 F. Supp. 2d 1083 (C.D. Cal. 2003) (holding City's denial of church's application for a CUP violated RLUIPA), *rev'd on other grounds* 197 Fed. Appx. 718 (9th Cir. 2006) (holding RLUIPA constitutional). In *Elsinore*, the City denied a church's conditional use permit. During its hearing on the matter, the Lake Elsinore City Council articulated three

---

[3] *See e.g. Church of Jesus Christ of Latter-Day Saints* v. *Jefferson County*, 741 F. Supp. 1522, 1526 n.7 (N.D. Ala. 1990); *Greentree at Murray Hill Condo.* v. *Good Shepherd Episcopal Church*, 550 N.Y.S.2d 981, 989 (N.Y. Sup. Ct. 1989) (holding that speculative fears of diminution of property values do not qualify as injury, let alone irreparable harm); *Englewood* v. *Apostolic Christian Church*, 362 P.2d 172, 177 (Colo. 1961) (McWilliams, J., concurring) ("The possible depressive effect on property values by the erection of a church in a residential zone is not in itself sufficient ground for denying a permit for construction of a church.") *Diocese of Rochester* v. *Planning Bd.*, 136 N.E.2d 827, 836 (N.Y. 1956) ("[I]t cannot seriously be argued that the decision of respondents denying this permit because of a loss of tax revenue is in furtherance of the general welfare."); *Anshe Chesed Congregation* v. *Bruggemeier*, 115 N.E.2d 65, 69 (Ohio App. 1953) ("No municipal corporation can justly refuse a permit to build a church only because the property will no longer be subject to taxation."); *Jacobi* v. *Zoning Bd. of Adjustment*, 196 A.2d 742, 745 (Pa. 1964) ("So universal is the belief that religious . . . institutions should be exempt from taxation that it would be odd indeed if we were to disapprove an action of the zoning authorities consistent with such belief and label it adverse to the general welfare.").

16

principal bases for its denial: 1) maintaining needed services provided by the Site's current tenant (a discount food store and recycling center); 2) preventing a lost of property tax revenue by replacing a commercial tenant with a non-commercial user; and 3) the possible inadequacy of on-site parking for the Church's proposed use, and potential adverse consequences on the parking needs of adjacent users.

The U.S. District Court found that "the maintenance of property tax revenue is a potentially pretextual basis for decision-making that appears to have been a specific target of RLUIPA." 291 F. Supp. 2d at 1093 (citing Report of the House Committee on the Judiciary (House Rep. 106-219) (July 1, 1999), at text accompanying n. 79 (cited in Hatch-Kennedy Statement, 146 Cong. Rec. S. 7774, at *7775)). The court went on to state:

> The Act's drafters were concerned that where, as here, a church is required to seek a permit, "[t]he zoning board [does] not have to give a specific reason [for denying the permit]. They can say it is not in the general welfare, or they can say you are taking property off the tax rolls." Indeed, if a city's interest in maintaining property tax levels constituted a compelling governmental interest, the most significant provision of RLUIPA would be largely moot, as a decision to deny a religious assembly use of land would almost always be justifiable on that basis. (citations omitted)

291 F. Supp. 2d at 1093; *see also Cottonwood Christian Center* v. *Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 (C.D. Cal. 2002.) (concluding that city's denial of property owner's conditional use permit application for construction of a church violated RLUIPA despite city's claim that it would lose tax revenue).

These claimed interests were also shot down in *Vietnamese Buddhism Study Temple,* where the City of Garden Grove's ordinance ("GGZO") permitted nonreligious assemblies to operate as a matter of right in zones where religious assemblies were completely forbidden. 460 F. Supp. 2d at 1166. One of these zones was the office professional zone where the Temple's property was located. The Temple was forced to completely shut down, and sought a

17

preliminary injunction against the Garden Grove to allow the congregation to assemble and practice their faith on the property. *Id.* The court found that the Temple put forth sufficient evidence to make a *prima facie* claim of an equal terms violation, and thus the city's facial differentiation between religious and nonreligious assemblies subjected its ordinance to strict scrutiny. *Id.* at 1174.

The primary concerns raised in the City Planning Commission's denial of the Temple's applications were increased traffic, increased on-street parking, and loss of revenue. The court found that "[t]hese three concerns simply do not justify facially unequal treatment between a church and a private club." *Id.* at 1174. The court reasoned:

> [I]f a tax exempt non-profit private organization decides to purchase property in the office professional zone, the City would suffer the same loss of revenue as it would if a religious association operated the property as a church. The City has not shown that a church or religious assembly would have a demonstrably different impact on the office professional zone than would a private club or lodge. This strongly suggests that the zoning ordinance impermissibly pursues Garden Grove's interests only against conduct motivated by religious belief.

*Id.* at 1175. The court preliminarily enjoined the city from enforcing those provisions of the GGZO against the Temple. *Id.*

In sum, there is between the Church's religious assembly is barred while secular assemblies, and even a specific religious one, are routinely permitted in B-4 districts. The Ordinance excludes religious uses from that district (unless a special land use permit is obtained), while private clubs, lodge halls, social and similar organizations, including assembly or rental halls and even funeral homes are all permitted as of right. There is nothing of record in this case which would indicate that Celebration Church's use of its property as a church would have any adverse effects on surrounding properties above and beyond those that would inherently be associated with any church located in the area, and "[b]ecause special uses, as

18

such, are considered compatible with other uses in the zoning district in which they are included, it is generally held that an application for a special use permit may not be denied on the ground that the use is not in harmony with the surrounding neighborhood." *City of Chicago Heights* v. *Living Word Outreach Full Gospel Church and Ministries, Inc.,* 749 N.E.2d 916, 929 (Ill. 2001) (citing 3 K. Young, Anderson's American Law of Zoning § 21.13, at 743 (4th ed. 1996)) *See also Sts. Constantine and Helen Greek Orthodox Church* v. *City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005) (RLUIPA protects against "the vulnerability of religious institutions-especially those that are not affiliated with the mainstream Protestant sects or the Roman Catholic Church-to subtle forms of discrimination when, as in the case of the grant or denial of zoning variances, a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards.).

Accordingly, since the Ordinance, on its face and as applied to Celebration Church, violates the equal terms and nondiscrimination provisions of RLUIPA, the City's wholly discretionary denial of the permit application cannot be upheld and its actions must be enjoined.

### 2. Celebration Community Church has no Adequate Remedy at Law and will Suffer Irreparable Harm if Injunctive Relief is Not Granted.

Celebration Church has shown that it will suffer clear irreparable injury if the Church is barred from practicing its religion on the property. Every day the Church is forced to deny religious services to its congregation is a day that the congregation is denied the First Amendment rights of freedom of speech, freedom of association, and free exercise of religion. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) (citing *New York Times Co.* v. *United States*, 403 U.S. 713 (1971)); *see also Newsom* v. *Norris,* 888 F.2d 371, 378 (6th Cir. 1989) (citing *Elrod* for the conclusion that "the Supreme Court has unequivocally

admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."); *Association of Community Organizations for Reform Now* v. *City of Dearborn*, 696 F. Supp. 268, 271 (E.D. Mich. 1988) (same). *Miller* v. *Blackwell*, 388 F.3d 546 (6th Cir. 2004) (Affirming grant of TRO "because Plaintiffs have demonstrated a strong likelihood of success on the merits regarding an alleged violation of their constitutional rights.").

Simply put, Celebration Church and its congregation has been completely denied their right to practice their faith in the manner of their choosing. Denying a congregation the ability to meet together for religious services on its own property constitutes "clear irreparable injury." *Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1172. The injury caused by the City is "especially burdensome" because it is placed on not just one individual, but many other worshippers. *Id.* at 1173. And while the financial hardship accompanying the land use denial is also a basis for finding irreparable harm, i*d.,* the uniqueness of the property is even more so, in that "every piece of property is unique and thus damages are an insufficient remedy to the denial of property rights." *Cottonwood Christian Ctr.* v. *Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1230 (C.D. Cal. 2002).

Here, the outright denial of a special land use permit to the Church—hindering the congregation's ability to hear religious teaching and participate in religious worship — constitutes irreparable harm. Thus a temporary restraining order or preliminary injunction is proper.

### 3.   *Greater Harm will Result to the Church than to Defendants.*

In striking the balance of irreparable harms, the harm to the Church outweighs any potential hardship to the City if an injunction is granted. As shown above, the harm to the

Church involves the most fundamental constitutional rights of the Church's congregants. The Church has been denied a place to worship and ministry, solely because the use is forbidden within the B-4 district (without special permission, which the City will not provide). Since Celebration Church meets all the requirements set out in the zoning ordinance, allowing the Church to worship on its property will not cause harm to anyone including other users of land in its vicinity. Aside from the pretextual reasons it has relied on to deny the use, the City cannot articulate a legitimate reason to support the position that congregants worshipping on the property will negatively impact the neighborhood. *See Digrugilliers,* 506 F.3d at 618.

This injunction will have no effect on the City's authority with respect to all other landowners and all other parcels of land in Muskegon. The City is only required to make the limited accommodations necessary to allow the Church and its congregation to engage in meaningful religious activity on its property. The *theoretical* impact of the injunction on the City's police power or tax receipts is insignificant, particularly in comparison to the seriousness of the harm the Church and its congregants suffer through the denial of their First Amendment rights. Even if it were legitimate for the City to be concerned about having "one church too many" in the area, the city remains free to zone more parcels as commercial to dilute any alleged negative impact as speculative as it is. The balance of hardships thus clearly lies in favor of the Church. *See Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1173.

### 4. The Issuance of a TRO, or alternatively a Preliminary Injunction, will Benefit the Public Interest.

Here, the public interest is decidedly in favor of granting the injunction.[4] By passing RLUIPA, "Congress conclusively determined the national public policy that religious land uses

---

[4]  RLUIPA specifically provides for "appropriate relief against a government." 42 U.S.C. § 200cc-2(a).

21

are to be guarded from interference by local governments to the maximum extent permitted by the Constitution." *Cottonwood Christian Ctr.*, 218 F. Supp. 2d at 1231 (commenting RLUIPA alone can establish that the public interest is strongly in favor of granting the injunction). The City's Ordinance violates the equal terms provision of RLUIPA, and "it is in the public interest not to perpetuate the unconstitutional application of a statute." *Martin-Marietta Corp.* v. *Bendix Corp.,* 690 F.2d 558, 568 (6th Cir. 1982). Finally, the public interest will be served as members of the Church will continue to have a building in which to worship.

## CONCLUSION

The City of Muskegon's Zoning Ordinance bestows more rights on nonreligious assembly uses than it does on identical religious users of land. A church is allowed use within a B-4 district only if it obtains a special land use permit and meets three conditions. This fact alone places religious uses on less than equal terms as nonreligious uses. Furthermore, even though Celebration Church meets these conditions and is a type of business which the code purports to promote within that area, the City has chosen to deny the Church's use for illegitimate and non-compelling reasons. The Zoning Ordinance, on its face and as applied to the Church, violates the equal terms provision of RLUIPA.

WHEREFORE, for the foregoing reasons, Plaintiff, Celebration Community Church, requests that the Court, *ex parte*, issue a Temporary Restraining Order, or in the alternative, a Preliminary Injunction.

Respectfully Submitted,

TOMKIW DALTON, plc

Daniel P. Dalton (P 44056)
Attorney for Plaintiff
321 Williams Street
Royal Oak, Mi 48067
(248) 591 7000

Dated: April 3, 2008

22

**Index of Exhibits to the Motion and Brief in Support of Injunctive Relief**

| Exhibit | Description |
|---------|-------------|
| 1 | Affidavit of Richard Deboer |
| 2 | Planning Department review |
| 3 | Planning Commission minutes, December 13 2007 |
| 4 | Email of Rick Perkins |
| 5 | Rick Perkins affidavit |
| 6 | Muskegon Planning Department email re liquor license |
| 7 | Planning Commission minutes, January 22 2008 |
| 8 | Muskegon Zoning Code, B-4 zoning designation |
| 9 | Muskegon Zoning Code, B-2 zoning designation |
| 10 | Muskegon Zoning Code, Special Approval Land Use criteria |
| 11 | Muskegon Chronicle letter |
| 12 | Muskegon Zoning Administrator letter, March 2008 |